Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Boulevard #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>FOUNDATION BUILDING MATERIALS, INC., RUBEN D. MENDOZA, CHASE HAGIN, CHRIS MEYER, RAFAEL A. COLORADO, MATTHEW J. ESPE, FAREED A. KHAN, CHAD R. LEWIS, JAMES F. UNDERHILL, and MAUREEN HARRELL,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to

- 1 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Foundation Building Materials, Inc. ("Foundation" or the "Company") and the members of Foundation's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the close of a proposed transaction, pursuant to which Foundation will be acquired by American Securities LLC ("American Securities") through American Securities' affiliates ASP Flag Intermediate Holdings, Inc. ("Parent"), and ASP Flag Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 15, 2020, Foundation issued a press release announcing that it had entered into an Agreement and Plan of Merger dated November 14, 2020 (the "Merger Agreement") to sell Foundation to American Securities.  Under the terms of the Merger Agreement, each Foundation stockholder will receive $19.25 in cash for each share of Foundation common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.37 billion.

3.     Concurrently with the execution of the Merger Agreement, in connection with a Tax Receivable Agreement dated as of February 8, 2017 ("TRA"), the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company and its controlling stockholder LSF9 Cypress Parent 2 LLC ("Principal Stockholder")[1] entered into a TRA Termination Agreement pursuant to which the Company will pay the Principal Stockholder approximately $75.5 million in addition to regular payments made between signing and closing under the terms of the TRA. That same day the Principal Stockholder executed and delivered an irrevocable written consent adopting the Merger Agreement and approving the Proposed Transaction and the TRA Termination Agreement. The Company's minority stockholders do not have a vote on the Proposed Transaction or the TRA Termination Agreement.

4.     On December 4, 2020, Foundation filed a Schedule 14C Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement omits or misrepresents material information concerning, among other things: (i) financial projections for Foundation; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore Group L.L.C. ("Evercore"), the financial advisor to the special committee of the Board (the "Special Committee"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Evercore, the Company's financial advisor RBC Capital Markets, LLC ("RBC") and Company insiders. Defendants authorized the issuance of

[1] Principal Stockholder is an affiliate of Lone Star Funds ("Lone Star"), a global private equity firm. Lone Star acquired Foundation in 2015 and has maintained a majority ownership of the Company since its initial public offering in 2017. The Principal Stockholder owns approximately 52.3% of the voting power of Foundation's outstanding shares.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     In short, unless remedied, Foundation's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the closing of the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

9.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Foundation.

10.     Defendant Foundation is a Delaware corporation, with its principal executive offices located at 2520 Red Hill Avenue, Santa Ana, California 92705.  The Company is a specialty building products distributor of wallboard, suspended ceiling systems, metal framing, and complementary and other products throughout North America.  Foundation's common stock trades on the New York Stock Exchange under the ticker symbol "FBM."

11.     Defendant Ruben D. Mendoza ("Mendoza") is the founder of the Company and has been President and Chief Executive Officer ("CEO") of the Company since 2011, and a director since February 2017.

12.     Defendant Chase Hagin ("Hagin") has been a director of the Company since February 2018.  Defendant Hagin is also a Director of Lone Star North America Acquisitions, L.P. ("Lone Star North America"), an affiliate of the Company and Lone Star.

13.     Defendant Chris Meyer ("Meyer") has been a director of the Company since February 2017.  Defendant Meyer is also a Senior Managing Director at Lone

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Star North America, and previously served as a Managing Director of Hudson Americas, L.P. ("Hudson Americas"), a related party of the Company and Lone Star.

14.   Defendant Rafael A. Colorado ("Colorado") has been a director of the Company since April 2018.   Defendant Colorado is also a Managing Director of Hudson Advisors, L.P., a related party of the Company and Lone Star.

15.   Defendant Matthew J. Espe ("Espe") has been a director of the Company since February 2018.

16.   Defendant Fareed A. Khan ("Khan") has been a director of the Company since February 2017.

17.   Defendant Chad R. Lewis ("Lewis") has been a director of the Company since April 2018.   Defendant Lewis is also a Director of Hudson Americas.

18.   Defendant James F. Underhill ("Underhill") has been a director of the Company since February 2017.

19.   Defendant Maureen Harrell ("Harrell") has been a director of the Company since February 2020.   Defendant Harrell is also a Managing Director of Hudson Americas.

20.   Defendants identified in paragraphs 11-19 are referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**OTHER RELEVANT ENTITIES**

21.    Principal Stockholder is a Delaware limited liability company and an affiliate of Lone Star.  Principal Stockholder owns approximately 52.3% of the voting power of Foundation's outstanding shares.

22.    American Securities is a leading U.S. private equity firm that invests in market-leading North American companies with annual revenues generally ranging from $200 million to $2 billion and/or $50 million to $250 million of EBITDA. American Securities and its affiliates have approximately $23 billion under management.

23.    Parent is a Delaware corporation and is an indirect wholly-owned subsidiary of funds sponsored by American Securities.

24.    Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

25.    Foundation is one of the largest specialty distributors of wallboard, suspended ceiling systems and metal framing in the United States and Canada.  The Company has expanded from a single branch in Southern California in 2011 to more than 175 branches across the United States and Canada as of December 31, 2019, carrying a broad array of more than 30,000 stock-keeping units ("SKUs").  Foundation

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

achieved net sales in 2013 of $113.7 million and reached net sales of over $2.1 billion for the year ended December 31, 2019.

26.    On November 2, 2020, Foundation announced its third quarter 2020 financial results, reporting net sales of $521.3 million, increased from net sales of $486.1 million in the second quarter of 2020; net income from continuing operations of $11.8 million, an increase from $9.9 million in the second quarter of 2020; and adjusted net income of $13.3 million, as compared with $11.6 million in the prior quarter of 2020.  Commenting on the Company's performance, defendant Mendoza stated:

> Despite the challenging market conditions in the third quarter, we have maintained profitability by optimizing our cost structure.  We continue to generate strong cash flows to invest in our business while reducing our debt levels to historic lows.  We will continue to navigate this challenging environment by focusing on driving organic growth and maximizing profitability to create long-term value for our Company.

**The Proposed Transaction**

27.    On November 15, 2020, Foundation issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SANTA ANA, Calif.--Foundation Building Materials, Inc. ("FBM" or the "Company") (NYSE: FBM), one of the largest specialty building products distributors of wallboard, suspended ceiling systems, metal framing and

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

complementary and other products in North America, today announced that it has entered into a definitive agreement under which an affiliate of American Securities LLC, a leading private equity firm, will acquire all outstanding shares of FBM for $19.25 per share in an all-cash transaction valued at approximately $1.37 billion, including outstanding debt.

An affiliate of Lone Star Funds ("Lone Star"), a global private equity firm, acquired FBM in 2015 and has maintained a majority ownership since the Company's initial public offering in 2017.   Upon completion of the transaction, FBM will become a privately held company.

The transaction, which was unanimously approved by the FBM Board of Directors, represents a premium of approximately 27% to the closing price of FBM common stock on November 13, 2020, the last trading day prior to the transaction announcement.

"We are pleased to announce this transaction with American Securities, delivering immediate cash value to our shareholders at a significant premium," said Ruben Mendoza, President and CEO of FBM.  "American Securities has a proven track record of investing in building products and distribution businesses, and shares our commitment to providing superior

- 9 -

products and services to our customers.  Having founded FBM nearly a decade ago, I am confident American Securities is the right partner for our company's next phase, as we work to advance our strategic priorities and continue building long-term value for the Company.  This transaction is truly a testament to the hard work and dedication of our more than 3,400 employees, and I'm excited to partner with the team at American Securities to further accelerate our success."

"The FBM Board, led by the Special Committee and with the assistance of independent financial and legal advisors, conducted a thorough review of opportunities to enhance shareholder value, and unanimously concluded that entering into this agreement with American Securities represents the best way to maximize value," said Chris Meyer, Chairman of the FBM Board.  "This transaction with American Securities is a great outcome for FBM, and I thank Ruben and the rest of the management team for leading FBM to this critical point in the Company's history.  We look forward to FBM's continued success with its new partner."

"FBM's strong national brand and reputation as the distributor of choice for leading building product suppliers make it a compelling investment for American Securities," said Kevin Penn, a Managing Director of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

American Securities.  "FBM has built meaningful relationships with its loyal customer base, and its focus on customer service underpins its leading market position.  We look forward to working with the FBM team to build on the Company's leadership and grow its global presence while further strengthening its relationships with its customers and partners."

**Approvals**

Following execution of the merger agreement, FBM's majority shareholder, which owns approximately 52% of the Company's outstanding shares of common stock, approved the transaction by written consent.  No further action by FBM's shareholders is needed or will be solicited in connection with the merger.

The transaction is expected to close in the first quarter of 2021, subject to customary closing conditions, including receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and the Competition Act (Canada).

**Insiders' Interests in the Proposed Transaction**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     Foundation insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Foundation.

29.     Notably, the Company's Principal Stockholder will be entitled to a payment of approximately $75.5 million in connection with the TRA Termination Agreement.

30.     In addition, Foundation insiders stand to reap substantial financial benefits for securing the deal with American Securities.  Pursuant to the Merger Agreement, all outstanding options and restricted stock units ("RSU") will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the value of the Company options and RSUs that Company insiders stand to receive:

| Name | Number of Shares Subject to Vested Company Stock Options | Total Expected Value of Vested Company Stock Options ($) | Number of Shares Subject to Unvested Options | Total Expected Value of Unvested Options ($) | Number of Shares Subject to Unvested Company RSUs | Total Expected Value of Unvested Company RSUs ($) | Total Expected Value of Company Stock Options and Company RSUs ($) |
|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | |
| Ruben Mendoza | 163,788 $ | 1,094,059 | 398,551 $ | 2,534,018 | 163,205 $ | 3,142,274 $ | 6,570,351 |
| John Gorey | 46,835 $ | 310,284 | 110,152 $ | 645,029 | 45,129 $ | 868,733 $ | 1,824,046 |
| Pete Welly | 63,861 $ | 423,083 | 150,198 $ | 879,334 | 61,537 $ | 1,184,587 $ | 2,487,204 |
| Richard J. Tilley | 43,192 $ | 272,434 | 85,978 $ | 498,802 | 35,319 $ | 679,891 $ | 1,451,127 |
| Kirby Thompson | 37,036 $ | 245,370 | 87,108 $ | 510,106 | 35,691 $ | 687,052 $ | 1,442,528 |
| Jim Carpenter | 9,195 $ | 60,904 | 21,622 $ | 126,622 | 13,294 $ | 255,910 $ | 443,436 |
| Onur Demirkaya | 5,259 $ | 35,421 | 20,736 $ | 97,541 | 12,676 $ | 244,013 $ | 376,975 |
| **Directors** | | | | | | | |
| Matthew Espe | — $ | — | — $ | — | 5,232 $ | 100,716 $ | 100,716 |
| Fareed Khan | — $ | — | — $ | — | 5,232 $ | 100,716 $ | 100,716 |
| James F. Underhill | — $ | — | — $ | — | 5,232 $ | 100,716 $ | 100,716 |

31.     Moreover, certain Company insiders participate in the LSF9 Cypress Parent LLC Long Term Incentive Plan (the "LTIP"), which will entitle them to cash payouts upon consummation of the Proposed Transaction.   The following table

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

summarizes the cash payments that Foundation insiders stand to receive under the LTIP:

| Name | Number of LTIP Pool Units | Total Expected Value of LTIP Pool Units |
|------|---|---|
| **Executive Officers** | | |
| Ruben Mendoza | 155,000 $ | 456,950 |
| John Gorey | 60,000 $ | 176,884 |
| Pete Welly | 60,000 $ | 176,884 |
| Richard J. Tilley | 20,000 $ | 58,961 |
| Kirby Thompson | 50,000 $ | 147,403 |
| Jim Carpenter | 40,000 $ | 117,922 |
| Onur Demirkaya | 30,000 $ | 88,442 |
| **Directors** | | |
| Fareed Khan | 5,000 $ | 14,740 |
| James F. Underhill | 5,000 $ | 14,740 |

32.    In addition, if they are terminated in connection with the Proposed Transaction, Foundation's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash [1] | Equity [2] | Perquisites/Benefits [3] | Total |
|------|---|---|---|---|
| Ruben Mendoza | $ 2,694,895 | $ 6,570,351 | $ 21,915 | $ 9,287,161 |
| John Gorey | $ 857,859 | $ 1,824,046 | $ — | $ 2,681,905 |
| Pete Welly | $ 857,859 | $ 2,487,204 | $ — | $ 3,345,063 |

## The Proxy Statement Contains Material Misstatements or Omissions

33.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Foundation's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to seek to exercise their appraisal rights in connection with the Proposed Transaction.

34.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) financial projections for Foundation; (ii) the

- 13 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Evercore; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by Evercore, the Company's financial advisor RBC and Company insiders.

***Material Omissions Concerning Financial Projections for Foundation***

35.    The Proxy Statement omits material information regarding financial projections for Foundation.

36.    For example, according to the Proxy Statement, Foundation management prepared and provided Evercore with "three different five-year financial scenarios contained in the Company's management plan dated as of October 15, 2020 (the 'Management Plan'): (i) the risk plan (the 'Risk Plan'), (ii) the base organic plan (the 'Base Organic Plan'), and (iii) the acquisitions plan (the 'Acquisitions Plan')." Proxy Statement at 34. The Proxy Statement however fails to disclose the Management Plan, to the extent the Management Plan reflects a separate set of financial projections. The Proxy Statement also sets forth that "Evercore reviewed each plan scenario at the instruction of the Special Committee, using assumptions provided by Company management." *Id.* at 35. The Proxy Statement, however, fails to disclose the assumptions underlying each of the Risk Plan, Base Organic Plan and Acquisitions Plan.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.     In addition, the Proxy Statement fails to disclose unlevered free cash flow ("UFCF") and the underlying line items for each of the Risk Plan, Base Organic Plan and Acquisitions Plan for years 2020 through 2024.

38.     The Proxy Statement further fails to disclose the estimated future cash payments and balance sheet liabilities under the TRA by and between the Principal Stockholder and the Company.

39.     The omission of this material information renders the statements in the "Unaudited Projected Financial Information of the Company" and "Opinion of Evercore" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning Evercore's Financial Analyses***

40.     The Proxy Statement omits material information regarding Evercore's financial analyses.

41.     The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses they performed in support of its opinion.  However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Foundation's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to seek to exercise their appraisal rights in connection with the Proposed Transaction.

- 15 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42.     With respect to Evercore's *Selected Public Company Analysis*, the Proxy Statement fails to quantify the liabilities considered under the TRA and the impact of the TRA liabilities on the high ends of the TEV/EBITDA multiples for the Company.

43.     With respect to Evercore's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the Company's net debt; (ii) quantification of the liabilities considered under the TRA and the impact of the TRA liabilities on the high ends of the TEV/EBITDA multiples; and (iii) quantification of the individual inputs and assumptions underlying the discount rates ranging from 13.5% to 14.5%.

44.     With respect to Evercore's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the UFCFs utilized in the analysis; (ii) how Evercore calculated UFCF; (iii) quantification of the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%; (iv) quantification of the estimated TRA liabilities on December 31, 2024 and the impact of the TRA liabilities on the high end of Evercore's reference range of exit TEV/EBITDA multiple when using the exit multiple method; and (v) quantification of the estimated cash payments under the TRA from fiscal year 2025 utilized under the perpetuity growth method; and (vi) quantification of Foundation's terminal value for each scenario under the exit multiple method and the perpetuity growth method.

45.     With respect to Evercore's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the identity of the transactions involving

- 16 -

residentially-focused building product distributors analyzed by Evercore; and (ii) the individual multiples and metrics for each of the residentially-focused transactions observed in the analysis.

46.     With respect to Evercore's *Illustrative Leveraged Buy-out* analysis, the Proxy Statement fails to disclose: (i) the forecasts used in connection with the analysis; and (ii) Evercore's basis for selecting the target internal rate of return, terminal multiple, and leverage multiple used in the analysis.

47.     With respect to Evercore's *Premium Paid Analysis*: (i) the specific transactions analyzed; and (ii) the individual premiums paid for each of the transactions analyzed.

48.     Without such undisclosed information, Foundation stockholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to seek to exercise their appraisal rights in connection with the Proposed Transaction.

49.     The omission of this material information renders the statements in the "Opinion of Evercore" and "Unaudited Projected Financial Information of the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

50.   The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

51.   For example, the Proxy Statement fails to disclose the terms of the confidentiality agreements the Company entered into with potential bidders.   The Proxy Statement discloses that "of the five financial sponsors and one industry participant contacted during the Company's outreach process, five parties had executed confidentiality agreements and were conducting due diligence." *Id.* at 23.  The Proxy Statement fails, however, to identify the parties that entered into confidentiality agreements, including whether the financial sponsor referred to in the Proxy Statement as "Party C" entered into a confidentiality agreement with the Company, and, if so, when.   The Proxy Statement also fails to disclose whether these confidentiality agreements contained standstill provisions and/or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

52.   The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.  If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a

- 18 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

53.     Any reasonable Foundation stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

54.     The Proxy Statement also fails to disclose how the various bidders valued the TRA and a quantification of any TRA-related payments the Principal Stockholder would receive in connection with the proposals the Company received during the sale process.  For example, on October 20, 2020, Party C submitted an indication of interest to acquire the Company at a purchase price ranging from $18.50 to $20.50 per share in cash – a range with a high end $1.25 above the Merger Consideration.  According to the Proxy Statement, "[t]he indication of interest contemplated the payment of the TRA in accordance with its terms."  *Id.* at 24.  On October 28, 2020, American Securities submitted an indication of interest to acquire the Company for $19.25 per share in cash.  The Proxy Statement states, "[t]he proposal contemplated termination of the TRA in accordance with its terms."  *Id.*  The Proxy Statement fails to quantify the payment of the TRA under the respective proposals.  Without this information, Foundation's minority stockholders cannot evaluate the adequacy of the sale process and are misled into accepting inadequate Merger Consideration.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

55.     In addition, in light of the Principal Stockholder's conflicts of interest as a majority stockholder and a recipient of TRA-related payments, the Proxy Statement fails to disclose the details of any prophylactic measures taken by the Board to insulate the conflicted directors.  Notably, although the Board established a Special Committee composed of defendants Espe, Khan and Underhill, the Proxy Statement sets forth that defendants Khan and Underhill each "[o]wn[] interests in entities which own direct or indirect non-controlling interests in LSF9 Cypress Parent 2 LLC[.]"  *Id.* at 64.  The Special Committee also appears to have played a limited role in the sale process.  For example, at its October 31, 2020 meeting, despite a potentially higher outstanding offer from Party C, the Board determined to grant exclusivity to American Securities without any recommendation of the Special Committee.  The Board and Special Committee further failed to negotiate a minority-of-the-majority provision.

56.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material   Omissions   Concerning   Evercore's,   RBC's   and   Company   Insiders' Potential Conflicts of Interest***

57.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Evercore and RBC.

58.     The Proxy Statement sets forth:

- 20 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Evercore will also be entitled to receive a termination fee if the Merger is not consummated, and a discretionary fee of up to $1.5 million based upon, among other things, the resources expended by Evercore in the course of the engagement, the satisfaction of the Special Committee with Evercore's services and the benefit to the Company of the successful conclusion of the engagement. During the two-year period prior to the date hereof, Evercore and its affiliates have not been engaged to provide financial advisory or other services to the Company and they have not received any compensation from the Company during such period. During the two-year period prior to the date of the opinion, Evercore and its affiliates have provided financial advisory services to affiliates of Parent, none of which services are related to the Merger or involve the Company, and received fees for the rendering of these services, including investment banking advisory fees of approximately $18 million from affiliates of Parent.

*Id.* at 39.   The Proxy Statement fails, however, to disclose whether the Company anticipates paying Evercore the additional fee.  The Proxy Statement further fails to disclose the details of any services Evercore provided to the Principal Stockholder or its affiliates during the two-year period prior to the date of its fairness opinion and the amount of compensation Evercore received in connection with any services it provided.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

59.     The Proxy Statement further states that, "[t]he Company has agreed to pay RBC Capital Markets for its services as financial advisor to the Company in connection with the Merger an aggregate fee currently estimated to be approximately $8.3 million, which is contingent upon the closing of the Merger." *Id.* at 41.  The Proxy Statement fails, however, to disclose the details of any services RBC provided to Foundation, the Principal Stockholder, or American Securities, and each of their respective affiliates, in the two-year period prior to the date of its fairness opinion, and any compensation received for services provided.

60.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61.     The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders. According to the Proxy Statement, Special Committee members defendants Khan and Underhill each "[o]wn[] interests in entities which own direct or indirect non-controlling interests in LSF9 Cypress Parent 2 LLC[.]" *Id.* at 64.  Yet, the Proxy Statement fails to disclose the details of these ownership interests.  The Proxy Statement similarly fails to disclose the details of defendants Khan and Underhill's interests in the TRA.  *See id.* at 65.  Without this information, Foundation's public stockholders cannot evaluate the independence of the Special Committee members.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

62.     In addition, the Proxy Statement fails to disclose whether any members of Foundation management have secured employment with the post-close company and the details of any employment and retention-related discussions and negotiations that occurred, including who participated in all such communications, when they occurred and their content.   The Proxy Statement further fails to disclose whether any of American Securities' proposals or indications of interest mentioned management retention.

63.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.   This information is necessary for Foundation's stockholders to understand potential conflicts of interest of management, the Special Committee and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

64.     The omission of this information renders the statements in the "Opinion of Evercore," "Fee Payable to the Company's Financial Advisor in Connection with the Merger," "Background of the Merger," and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

65.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the deadline to exercise appraisal rights in connection with the Proposed Transaction, Plaintiff and the other stockholders of Foundation will be unable to make an informed appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

68.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Evercore, the background of the Proposed Transaction, and potential conflicts of interest faced by Evercore, the Company's financial advisor RBC and Company insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

69.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to seek to exercise their appraisal rights.

70.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

71.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for

### Violations of Section 20(a) of the Exchange Act

72.     Plaintiff repeats all previous allegations as if set forth in full.

73.     The Individual Defendants acted as controlling persons of Foundation within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Foundation, and participation in and/or

- 25 -

awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

74.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

76.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

77.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Foundation's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Foundation, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Foundation stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 14, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: _____

Joel E. Elkins
9100 Wilshire Boulevard #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
            -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS